Maxwell *v.* Whieldon, Administrator.

---

RHODA MAXWELL *vs.* WILLIAM W. WHIELDON, Administrator.

Where G. placed a certificate of bank stock in the possession of M., and by written memorandum agreed that on the performance of a certain executory contract by M. the stock should be the property of M., and M. performed the condition; *Held,* that this was a trust of personal estate, and that M. was entitled to a transfer of the stock from G.

19*

Maxwell *v.* Whieldon, Administrator.

BILL IN EQUITY, in which the complainant prays that the respondent, as administrator of the estate of Benjamin Gleason, late of Cambridge, deceased, may be decreed to transfer to her, ten shares of the capital stock of the State Bank, Boston, standing in the name of said Gleason on the books of the bank at the time of his decease.

The bill states that on 2d December, 1831, the complainant, a sister of Gleason's wife, was a domestic in his family. His wife then was and ever after continued to be lame and feeble; that on 2d December, 1831, Gleason, as an inducement to complainant to continue in his family, and take care of his wife, by his memorandum* delivered to the complainant, in consideration and as an equivalent for her future services in the family during her life, gave her a certificate of ten shares in the State Bank, and appointed her his attorney to receive the dividends, and hold said property as her own; upon the back of which memorandum was an indorsement in these words, namely, that Gleason " delivered to complainant the certificate of said shares, issued by the bank;" which memorandum and certificate have ever since been, and now are, in her possession; that said shares during all this time stood, and now stand, in Gleason's name on the books of the bank; and were, and are, transferable only at the bank

---

\* Which memorandum was in these words:

"East Cambridge, December 2, 1831.

This certifies that I give to Miss Rhoda Maxwell, sister and domestic of our family, the enclosed certificate of ten shares in the State Bank, Boston, and the full sum of $600, its true value, (named $1,000 and $400 deducted therefrom,) and hereby appoint her my 'legal representative' to receive the semi-annual dividends, and hold the property as her own, in consideration, and as an equivalent for all future services in our family during her natural life, she being a single woman.                                        BENJAMIN GLFASON."

On the back was written:

" Memorandum. Provided, Miss R. Maxwell marries and leaves the family, it is required of her to hold only $100 of the within-named $600, and relinquish the balance to the family, should they require it. The $100 intended as her marriage portion with other presents at pleasure, &c.                  B. GLEASON."

" In case of the above change of condition, the $500 for my wife, Mrs. R. W. Gleason, for her exclusive benefit.                              B. G.

East Cambridge, December 2, 1831."

by Gleason in person, or his attorney. The complainant avers that she is and ever has been a single woman, and from December 2, 1831, to about December 1, 1844, in consideration of said gift, and from motives of humanity, continued to reside in Gleason's family—taking care of his wife, and his affairs, except when absent on occasional visits to relations, &c. That by an agreement between Gleason and the respondent in December, 1844, Gleason discontinued housekeeping, and his wife went to reside in the respondent's family, where she remained until her death in December, 1846, and in consequence thereof, the complainant ceased to reside as a domestic in Gleason's family; that Gleason died in September, 1847, and at his death, left property sufficient to pay his debts, without requiring said shares.

That Gleason ever after December 2, 1831, received the dividends, which he paid to the complainant from time to time, as she wanted them, and she says that she has never received any other compensation for her services. The bill avers that the respondent was appointed administrator, on Gleason's estate, October 12, 1847, and since his appointment has received the dividends on said shares, amounting to $150 ; that the complainant cannot sell or dispose of said shares, or obtain the dividends, or derive any income from them, so long as they stand in Gleason's name, as they now do ; that since his appointment, she has applied to the respondent for relief, and exhibited to him said certificate and memorandum as evidence that the shares had been given to her by Gleason, and that she was the true owner of them, and urged him to transfer them to her, and to pay her the dividends received by him, and especially on the 2d August, 1849, did she so request him. But he has refused and still does refuse, &c.

The prayer of the bill is, that he may be ordered to transfer said shares to the complainant, and account for, and pay over the dividends received by him, and for further relief.

The most material allegations of the bill were admitted in the answer ; a few minor points were denied, but they were either found by the court to be true upon the evidence, or were considered by the court as immaterial to the decision of the case.

The cause was set down for hearing before the whole court upon the bill, answers, and depositions.

The questions for the court are, first, whether upon the execution and delivery to the complainant of the memorandum in writing mentioned in the complainant's bill, accompanied with a delivery to her at the same time of the original certificate of the bank shares, the legal title to the shares was transferred to and vested in the complainant, absolutely or conditionally, or whether the title to and property in the shares still remained in said Gleason. And if in said Gleason, then, second, whether the delivery of the memorandum and certificate of stock to the complainant, amounted in legal construction to such a declaration or agreement on the part of Mr. Gleason, that the shares should become her property, upon her remaining single and as a domestic in Gleason's family, as stated or implied in the memorandum, as to make him a holder of the shares in trust for the complainant. And if so, then, third, whether, upon the facts in the case, the complainant is entitled to have the shares transferred to her, and an account taken of the dividends thereon received by the respondent as prayed in the bill.

*E. Buttrick*, for the complainant.

1. The complainant acquired no title to the bank shares under the memorandum accompanied with a delivery to her of the certificate of stock, but only a right to acquire a title by a performance of the services contemplated. *Quincy* v. *Spear*, 15 Pick. 144; *Mason* v. *Thompson*, 18 Pick. 305; *Reed* v. *Upton*, 10 Pick. 522; *Herring* v. *Willard*, 2 Sandf. 418.

2. The memorandum and delivery of the certificate of stock amounted to a bailment or hypothecation of the shares as security for the agreement of Gleason, that the complainant should hold the shares as her property on the performance of the stipulated service.

3. If she has performed the required service, she is entitled to have the shares transferred to her.

*M. G. Cobb*, for the respondent.

1. By the terms of the whole memorandum the sale was conditional only; the property to vest absolutely upon compliance with the condition.

2. The sale is not qualified by the clause in the certificate of stock, as to the mode of transfer, &c. *St.* 1812; 4 Mass. Special St. 370; *Sargent* v. *Franklin Insurance Co.* 8 Pick. 96; *Commercial Bank of Buffalo* v. *Kortright,* 22 Wend. 362; *Kortright* v. *Commercial Bank of Buffalo,* 20 Wend. 91; *Black* v. *Zacharie,* 3 How. 483.

3. So that the only question is, whether the condition has been complied with.

4. The sale does comply with the by-laws of the bank, being a sale coupled with a power of attorney to transfer. Story on Agency, §§ 58, 102; *Damon* v. *Inhabitants of Granby,* 2 Pick. 345.

5. The memorandum relied upon, if not a sale, is then a mere authority to collect dividends, and plaintiff needs no relief in this court. Story on Agency, § 104.

6. If the memorandum be not a sale, it is by reason of the by-laws of the bank with which this defendant has no concern, his intestate having long since parted with his legal equitable interest. *Sargent* v. *Franklin Insurance Co.* 8 Pick. 96; *Black* v. *Zacharie,* 3 How. 483; *Commercial Bank of Buffalo* v. *Kortright,* 20 Wend. 91.

7. Complainant's remedy is against the bank for specific performance, if against any one.

8. Complainant does not state a case for relief. 2 Story on Eq. §§ 717, 717 *a,* 724.

9. The State Bank, Boston, should have been made a party. Story on Eq. Plead. § 77.

10. The memorandum in question is not an original document.

11. Or if so, it is too loose and vague, and insufficient for a court of equity to interfere. 1 Story on Eq. § 979 *a.*

12. The character of the memorandum, with the facts in the case, go to repel the presumption which arises from the possession of the certificate. 3 Chitty on Com. and Man. 208.

13. If the memorandum amounts to a sale, then it is made with a condition precedent, to be performed by the complainant, which has never been complied with.

14. The respondent's intestate, before his death, made other provision for the complainant, in lieu of this stock.

CUSHING, J.   All the equity powers of this court are such as the statute communicates to us; and of course we take no others.   Even the cases of jurisdiction, taken apparently by construction, are, on the contrary, examples of a secondary power, absolutely conferred by statute, though it be as the included consequence of a primary power.   *Holland* v. *Cruft,* 20 Pick. 321.

By the existing provision of law, the court has jurisdiction of all suits and proceedings for enforcing and regulating the execution of trusts, whether the trusts relate to real or personal estate; subject of course to the general condition of being a case where the parties have not a plain, adequate, and complete remedy at common law.   Rev. Sts. *c.* 81, § 8.

By the antecedent statute, for which this provision is the substitute, the court had jurisdiction to hear and determine in equity all cases of trust arising under deeds, wills, or in the settlements of estates; *St.* 1817, *c.* 87; which last phrase, it cannot be denied, means, not *settlements* technically so called, but the administration of the estates of deceased persons. *Gibbens* v. *Peeler,* 8 Pick. 254; *Campbell* v. *Sheldon,* 13 Pick. 8.

We know historically that the legislature of the commonwealth, in substituting the latter provision for the former, intended to enlarge, not to diminish the trust power.   Commissioners' Report on Rev. Sts. *c.* 81.

Neither statute defines what is a trust.   This we are to determine by the general principles of law, under condition always of such limitations as the general statutes may provide.   Suffice it to say that our jurisdiction comprehends implied as well as express trusts.   See *Safford* v. *Rantoul,* 12 Pick. (2d ed.) 243, *note.*   Now as the second statute, by enlarging, in fact comprehends the first, it follows that whatever jurisdiction the judgments of the court have ascertained to be in the more limited statute, is also in the more extended one.

In this point of view, we might perhaps well say that the present case is that of a trust arising in the settlement of an estate; the more so, in that an administrator or executor is, in many relations, a trustee for third parties, and holds property

under constructive trusts; 2 Williams on Ex. (3d Am. ed.) 1717; which this court notices. *Gibbens* v. *Peeler, ubi supra.*

But the case may, as we conceive, be satisfactorily disposed of, on more definite and specific premises of conclusion.

We think the paper signed by the respondent's intestate created a trust of personal estate. It was a sale on condition by Benjamin Gleason, to Rhoda Maxwell, thus dividing the legal estate from the equitable, leaving the one in Gleason, and the other in the complainant.

After the signature and delivery of the memorandum by Gleason, which is sufficiently proved, and all the parts of which are to be taken together, and the delivery of the certificates of bank stock to the complainant, neither of them was able to make a good and perfect title to the shares; for a complete transfer could not be made by Gleason without production of the certificates, which were in the hands of the complainant, nor could the complainant do it, because the certificate itself provides for transfer only by the party named in it in person, or by his attorney, or in case of death, by his legal representative. Here, then, is a trust, according to the whole current of authority. It is a precise and pertinent example of the definition of a trust in the text books, that is, an equitable right, title or interest in property, distinct from the legal ownership thereof. 2 Story on Eq. § 964.

What, then, is the trust between the parties? We think it is plainly this: The certificates of stock were to be taken by Rhoda Maxwell, and held in consideration of services to be performed; in case of a performance, the whole interest was to vest in her; in case of non-performance, then a part only (one sixth) of the interest.

We think the services in question were fully and most faithfully performed by the complainant; and that if in the case there be any apparent defect of performance, that defect arose from, or was occasioned by, acts of the intestate; which consideration frees the complainant from all imputation of breach of condition, by premature termination of her service.

If, on the other hand, according to one hypothesis of defence suggested at bar, the memorandum and the delivery of the

certificate are to be held in law as constituting an absolute sale of the bank stock, then it is a *bonâ fide* assignment for value, and the complainant would still be entitled to relief, because of something which remains to be done by Gleason, or his representative, to give entire legal effect to the assignment; but the case might then present itself under a different aspect, in so far as regards the question of jurisdiction.

It seems unnecessary to go into the incidental points of law or fact in the case, as they do not involve any serious question of legal principles.

The complainant is entitled to a decree to compel the respondent to give to her a complete legal transfer of the whole of the ten shares of bank stock, and to account for dividends.

*Decree accordingly.*